Tab A

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
04/29/2015 10:16:56 AM
KEITH E. HOTTLE
Clerk

| | | |
|---|---|---|
| RALPH DEAN | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | 79th JUDICIAL DISTRICT |
| | § | |
| LIVING MODULAR, LLC, | § | |
| RANDY COLEMAN AND | § | |
| JIM COLEMAN COMPANY | § | JIM WELLS COUNTY, TEXAS |

## FINAL JUDGMENT

On June 2, 2014, this cause was called for trial. Ralph Dean, Plaintiff, appeared in person and by attorney of record and announced ready for trial. Jim Coleman Company, Defendant, appeared in person and by attorney of record and announced ready for trial. Living Modular, LLC, Defendant, although having previously appeared and answered in this cause, failed to appear. Randy Coleman, Defendant, although having previously appeared and answered in this cause, failed to appear. A jury of twelve qualified men and women were duly tested, selected, empaneled and sworn, and the case proceeded to trial. The trial proceeded until June 3, 2014, at which time the evidence of all parties was closed.

At the conclusion of the evidence, outside the presence of the jury, Plaintiff Ralph Dean moved for a Post-Answer Default Judgment against Defendant Living Modular, LLC and Defendant Randy Coleman. The Court, having considered the motion, rendered judgment in favor of Plaintiff Ralph Dean against Defendant Living Modular, LLC and against Defendant Randy Coleman as decreed below.

The Court then prepared a written charge to the jury and submitted same to Plaintiff Ralph Dean and Defendant Jim Coleman Company through their attorneys of record for their inspection, and a reasonable time was given to them to examine and present objections thereto outside the presence of the jury. Rulings were made upon all objections. The written charge included a series of written questions submitted to the jury under the Court's instructions.



The parties, through their attorneys of record, were permitted to argue the case to the jury on June 3, 2014. At the conclusion of the arguments, the jury retired and deliberated and ultimately reached its verdict with answers to each of the questions submitted to them by a unanimous vote of twelve to zero. The jury returned its verdict to the Court, and it was received by the Court and ordered filed among the papers of the cause and is now incorporated herein for all purposes. The jury was then discharged.

The Court found and now finds that the jury's verdict is favorable to Plaintiff Ralph Dean pursuant to Tex. Bus. & Com. Code Section 17.41, et seq. as submitted to the jury under the Court's charge. It appears to the Court from the verdict of the jury and the law applicable to the verdict that judgment should be entered in favor of Plaintiff Ralph Dean and against Defendant Jim Coleman Company as decreed below.

IT IS THEREFORE, ORDERED, ADJUDGED, AND DECREED that Ralph Dean recover from Living Modular, LLC and Randy Coleman, based on the Post-Answer Default Judgment, the following:

1. The sum of $47,659.38 as economic damages;

2. Prejudgment interest on $47,659.38 at 5.00% per annum pursuant to Tex. Fin. Code Section 304.104 from November 30, 2011 through the date this judgment is signed; the amount of prejudgment interest from November 30, 2011 through June 6, 2014 is $5,991.70, and interest continues to accrue at the rate of $6.57 per day from June 7, 2014 until the date the judgment is signed;

3. The sum of $142,978.14 as additional damages pursuant to Tex. Bus. & Com. Code Section 17.50(b)(1);

4. The sum of $51,960.00 as attorney's fees; and, if this cause is not appealed, the judgment for attorney's fees will be credited with $25,000.00, leaving an award of attorney's fees of $26,960.00; and, if this cause is appealed to the court of appeals, but the appeal is not carried to the Supreme Court of Texas by appeal or writ of error, the judgment for attorney's fees will be credited with $10,000.00, leaving an award of attorney's fees of $41,960.00;

5. Postjudgment interest at the rate of 5.00% per annum, from one day after this judgment is signed until the judgment is paid in full pursuant to Chapter 304 of the Texas Finance Code;

6. All costs of court are taxed against Modular Living, LLC, Randy Coleman and Jim Coleman Company;

7. All writs and processes for the enforcement and collection of this judgment may issue as necessary; and

8. All relief requested in this case and not expressly granted is denied. This judgment is final, disposes of all claims and all parties, and is appealable.

IT IS THEREFORE FURTHER ORDERED, ADJUDGED AND DECREED that Ralph Dean recover from Jim Coleman Company, based on the jury's verdict, the following:

1. The sum of $47,659.38 as economic damages;

2. Prejudgment interest on $47,659.38 at 5.00% per annum pursuant to Tex. Fin. Code Section 304.104 from November 30, 2011 through the date this judgment is signed; the amount of prejudgment interest from November 30, 2011 through June 6, 2014 is $5,991.70, and interest continues to accrue at the rate of $6.57 per day from June 7, 2014 until the date the judgment is signed;

3. The sum of $142,978.14 as additional damages pursuant to Tex. Bus. & Com. Code Section 17.50(b)(1);

4. The sum of $51,960.00 as attorney's fees; and, if this cause is not appealed, the judgment for attorney's fees will be credited with $25,000.00, leaving an award of attorney's fees of $26,960.00; and, if this cause is appealed to the court of appeals, but the appeal is not carried to the Supreme Court of Texas by appeal or writ of error, the judgment for attorney's fees will be credited with $10,000.00, leaving an award of attorney's fees of $41,960.00;

Tab B



CAUSE NO. 11-04-49987-CV

FILED AT 12:00 O'CLOCK M
R. DAVID GUERRERO
MAR 18 2014
CLERK DIST COURT JIM WELLS CO. TEXAS
DEPUTY

| RALPH DEAN | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | |
| | § | 79th JUDICIAL DISTRICT |
| LIVING MODULAR, LLC, | § | |
| RANDY COLEMAN, AND | § | |
| JIM COLEMAN COMPANY, | § | JIM WELLS COUNTY, TEXAS |

## PLAINTIFF'S THIRD AMENDED ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW RALPH DEAN, hereinafter referred to as Plaintiff and makes and files this his third amended original petition complaining of and against Living Modular, LLC, Randy Coleman, and Jim Coleman Company, hereinafter collectively referred to as Defendants, and in support of same would show the court as follows:

The last three digits in plaintiff's social security number are 036.

The last three digits in plaintiff's driver's license number are 388.

### I. DISCOVERY

1.1 Discovery shall be conducted according to a Scheduling Order pursuant to Level III.

### II. PARTIES

2.1 Plaintiff is an individual residing in Sandia, Jim Wells County, Texas.

2.2 Defendant, Living Modular, LLC is a limited liability corporation incorporated in the State of Texas and has entered an appearance herein. No service is necessary.

POSTED

VOL 001 PAGE 293

**2.3** Defendant, Randy Coleman, has entered an appearance herein. No service is necessary.

**2.4** Defendant, Jim Coleman Company, is a Texas corporation and has entered an appearance herein. No service is necessary.

### III. VENUE

**3.1** Venue is appropriate in Jim Wells County, Texas inasmuch as a substantial part of the events giving rise to these claims occurred in Jim Wells County, Texas. TPRC §15.002. Venue is proper for all Defendants.

### IV. BACKGROUND FACTS

**4.1** On or about October 22, 2009, Defendants Living Modular, LLC and Randy Coleman entered into an agreement to manufacture and ship two house modules to Plaintiff. Plaintiff agreed to pay $63,700.00 for these modules, and they were to be manufactured in accordance with good and workmanlike practices and delivered to a location in Jim Wells County, Texas in a reasonable period of time. Defendant Randy Coleman visited the site in Jim Wells County and met with Plaintiff at the site in order to finalize details for erecting the structures at that site. Plaintiff advanced the sum of $33,000.00 towards the purchase of these modules. Living Modular and Randy Coleman represented that the modules would be manufactured and delivered promptly. Defendant Randy Coleman visited Plaintiff at Plaintiff's home in Jim Wells County for the purpose of asking Plaintiff for additional money. This separate agreement was entered into in Jim Wells County and additional money was paid to Defendant in Jim Wells County, Texas. At all times relevant to the facts alleged in this paragraph and throughout this Petition, Randy Coleman was acting as an agent for Defendants Living Modular, LLC and Jim Coleman

2

Company. At Defendant's request, Plaintiff advanced additional money and materials of at least $6,204.00 for use by Living Modular, Randy Coleman, and Jim Coleman Company in the assembly of the modules. To this date, Living Modular, Randy Coleman, and Jim Coleman Company have totally failed to perform their obligation to manufacture and/or deliver the modules.

4.2 Living Modular maintained its operations at the Jim Coleman Company facility in Houston, Texas during the period that Living Modular representatives negotiated to sell the modules to Plaintiff. While on Jim Coleman premises, Living Modular and Jim Coleman agents (amongst which were Coleman family members) represented to Plaintiff that Living Modular was affiliated with and supported by Jim Coleman Company. They made these representations to encourage Plaintiff to purchase a modular home from Living Modular.

## V. BREACH OF CONTRACT

5.1 At all times material to this petition, Plaintiff was ready and able to perform his part of the agreement with Living Modular, Randy Coleman, and Jim Coleman Company. In violation of the promises and obligations under the agreement described above, Living Modular, Randy Coleman, and Jim Coleman Company wholly failed to deliver the two housing modules at the time and place and in the manner agreed on.

5.2 At the formation of the contract, Plaintiff paid Living Modular, Randy Coleman, and Jim Coleman Company the sum of $33,000.00. In addition, Plaintiff advanced additional cash and/or materials at a value of $6,204.00 to Living Modular, Randy Coleman, and Jim Coleman Company for additional improvements in the manufacture of the two

housing modules. As a result of the breach of contract by Living Modular, Randy Coleman, and Jim Coleman Company, Plaintiff demands the return of those sums.

5.3 On February 10, 2011, Plaintiff presented the claim made the subject of this action to Living Modular and Randy Coleman for payment by letter received on or about February 16, 2011. Payment for the just amount owed has not been tendered. Plaintiff filed suit against Living Modular and Randy Coleman on April 29, 2011.

5.4 Plaintiff has performed all conditions precedent.

## VI. DECEPTIVE TRADE PRACTICES

6.1 At the time of the transactions described above, Randy Coleman and employees and/or agents of Living Modular and Jim Coleman Company, represented that the two housing modules would be timely manufactured, incorporating the additional materials purchased by Plaintiff, and timely delivered to Plaintiff. These representations were false, misleading, and deceptive in that Living Modular, Randy Coleman, and Jim Coleman Company did not timely manufacture the housing modules, did not incorporate the additional materials purchased by Plaintiff, and did not timely deliver the housing modules to Plaintiff. Thus, Living Modular, Randy Coleman, and Jim Coleman Company have committed the following laundry list violations:

- representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have;
- representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve;
- failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed;

Tex. Bus. & Com. Code Ann. § 17.46(b)(5), (12), (24) (Vernon).

4

6.2 While negotiating the contract with Plaintiff, Randy Coleman and other agents of Jim Coleman Company explicitly and implicitly represented that Living Modular was affiliated with and had the support of Jim Coleman Company. These representations were false, misleading, and deceptive in that Living Modular had no actual connection or affiliation with Jim Coleman Company. For that reason, Living Modular, Randy Coleman, and Jim Coleman Company have committed the following laundry list violations:

- causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
- causing confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another;
- representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not;
- failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed;

*Id.* § 17.46(b)(2), (3), (5), (24).

6.3 Plaintiff relied on these representations to his detriment.

6.4 Living Modular, Randy Coleman, and Jim Coleman Company's conduct was a producing cause of Plaintiff's economic damages, that being the advance payment to Living Modular, Randy Coleman, and Jim Coleman Company in the amount of $33,000.00 and the value of additional materials and/or cash advanced by Plaintiff in the amount of $6,204.00.

6.6 The deceptive acts of Living Modular, Randy Coleman, and Jim Coleman Company were committed knowingly and intentionally. Randy Coleman, and the employees and/or agents of Jim Coleman Company and Living Modular had actual awareness of the falsity and deception of their conduct, coupled with the specific intent

5

that Plaintiff act in detrimental reliance on such falsity and deception. As a result of Living Modular, Randy Coleman, and Jim Coleman Company's intentional misconduct, Plaintiff suffered mental anguish. Accordingly, Plaintiff is entitled to damages for mental anguish and additional damages of up to three times Plaintiff's actual damages.

6.7 Living Modular, Randy Coleman, and Jim Coleman Company's conduct as described in this petition and the resulting damage and loss to Plaintiff has necessitated Plaintiff's retention of the attorneys whose names are subscribed to this petition. Plaintiff is entitled to recover from Living Modular, Randy Coleman, and Jim Coleman Company an additional sum to compensate Plaintiff for reasonable attorney's fees for necessary services in the preparation and prosecution of this action, as well as a reasonable fee for any and all necessary appeals to other courts.

## VII. JURY DEMAND

7.1 In accordance with Rule 216 of the Texas Rules of Civil Procedure, Plaintiff hereby makes application for a jury trial and requests that this cause be set on the Court's Jury Docket. In support of his application, the appropriate jury fee has been paid to the clerk at least thirty (30) days in advance of the trial setting.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays for a final hearing herein, judgment against the Defendants for his damages as alleged, costs of court, attorney's fees and for such other and further relief to which he is entitled whether or in law or in equity.

6

Respectfully Submitted,

**WEBB CASON, P.C.**
710 Mesquite Street
Corpus Christi, Texas 78401
Telephone: (361) 887-1031
Facsimile: (361) 887-0903

BY: _____
CHARLES C. WEBB, JR.
State Bar No. 21039500
BENNY M. CASON
State Bar No. 03969250
PARKER S. WEBB
State Bar No. 24085648

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above and foregoing document was this ___ day of March 2014 forwarded to counsel of record as stated below.

*Via Certified Mail – RRR*
Paul W. Lawrence
*Lawrence & Baca*
2180 North Loop West, Ste 510
Houston, Texas 77008

*Via Certified Mail – RRR*
Randy Coleman, Pro Se
3380 West Old Loma Vista Rd
Batesville, Texas 78229

Living Modular
Defendant, Pro Se
304 South Bay
Palacios, Texas 77465

_____
Charles C. Webb, Jr.

Tab C

CAUSE NO. 11-04-49987-CV

| | | |
|---|---|---|
| RALPH DEAN | § | IN THE DISTRICT COURT |
| VS. | § | |
| | § | |
| LIVING MODULAR, LLC, | § | 79th JUDICIAL DISTRICT |
| RANDY COLEMAN, AND | § | |
| JIM COLEMAN COMPANY, | § | MONTGOMERY COUNTY, TEXAS |

FILED AT 1:40 O'CLOCK A.M.
R. DAVID GUERRERO
JUN X 3 2014
CLERK, COUNTY, TEXAS
BY _____ DEPUTY

## CHARGE OF THE COURT

LADIES AND GENTLEMEN OF THE JURY:

This case is submitted to you by asking questions about the facts, which you must decide from the evidence you have heard in this trial. You are the sole judges of the credibility of the witnesses and the weight to be given their testimony, but in matters of law, you must be governed by the instructions in this charge. In discharging your responsibility on this jury, you will observe all the instructions, which have previously been given you. I shall now give you additional instructions, which you should carefully and strictly follow during your deliberations.

1.    Do not let bias, prejudice or sympathy play any part in your deliberations.

2.    In arriving at your answers, consider only the evidence introduced here under oath and such exhibits, if any, as have been introduced for your consideration under the rulings of the court, that is, what you have seen and heard in this courtroom, together with the law as given you by the court. In your deliberations, you will not consider or discuss anything that is not represented by the evidence in this case.

3.    Since every answer that is required by the charge is important, no juror should state or consider that any required answer is not important.

POSTED

4.     You must not decide who you think should win, and then try to answer the questions accordingly. Simply answer the questions, and do not discuss nor concern yourselves with the effect of your answers.

5.     You will not decide the answer to a question by lot or by drawing straws, or by any other method of chance. Do not return a quotient verdict. A quotient verdict means that the jurors agree to abide by the result to be reached by adding together each juror's figures and dividing by the number of jurors to get an average. Do not do any trading on your answers; that is, one juror should not agree to answer a certain question one way if others will agree to answer another question another way.

6.     You may render your verdict upon the vote of ten or more members of the jury. The same ten or more of you must agree upon all of the answers made and to the entire verdict. You will not, therefore, enter into an agreement to be bound by a majority or any other vote of less than ten jurors. If the verdict and all of the answers therein are reached by unanimous agreement, the presiding juror shall sign the verdict for the entire jury. If any juror disagrees as to any answer made by the verdict, those jurors who agree to all findings shall each sign the verdict.

These instructions are given you because your conduct is subject to review the same as that of the witnesses, parties, attorneys and the judge. If it should be found that you have disregarded any of these instructions, it will be jury misconduct and it may require another trial by another jury; then all of our time will have been wasted.

The presiding juror or any other who observes a violation of the court's instructions shall immediately warn the one who is violating the same and caution the juror not to do so again.

When words are used in this charge in a sense that varies from the meaning commonly understood, you are given a proper legal definition, which you are bound to accept in place of any other meaning.

Answer "Yes" or "No" to all questions unless otherwise instructed. A "Yes" answer must be based on a preponderance of the evidence unless otherwise instructed. If you do not find that a preponderance of the evidence supports a "Yes" answer, then answer "No." The term "preponderance of the evidence" means the greater weight and degree of credible evidence admitted in this case.

Whenever a question requires an answer other than "Yes" or "No," your answer must be based on a preponderance of the evidence unless otherwise instructed

## II.

You are instructed that the Defendant Jim Coleman Company can only act or fail to perform a required act through the action of an agent, servant or employee of Jim Coleman Company. You are instructed that liability for a corporation cannot be created by any act or failure to perform a required act by any person who is not an agent, servant or employee.

For the Jim Coleman Company to be liable for damages caused by an Agent, Servant or Employee, such action or omission to act must be within the course of the agency or employment of that Agent, Servant or Employee.

## QUESTION 1

Did the Jim Coleman Company engage in any false, misleading, or deceptive act or practice that Ralph Dean relied on to his detriment and that was a producing cause of damages to Ralph Dean?

"Producing cause" means a cause that was a substantial factor in bringing about the damages, if any, and without which the damages would not have occurred. There may be more than one producing cause.

"False, misleading, or deceptive act or practice" means any of the following:

(a) causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(b) causing confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another;

(c) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have;

(d) representing that a person has a sponsorship, approval, status, affiliation, or connection which he does not;

(e) representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve;

(f) failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

Answer "Yes" or "No."

Yes

If you answered "Yes" to QUESTION 1, then answer the following question. Otherwise, do not answer the following question.

## QUESTION 2

Did the Jim Coleman Company *engage* in any false, misleading, or deceptive act or practice *or* conduct knowingly?

"Knowingly" means actual awareness of the falsity, unfairness, or deceptiveness of the act or practice. Actual awareness may be inferred if objective manifestations indicate that a person acted with actual awareness.

In answering this question, consider only the conduct that you have found was a producing cause of damages to Ralph Dean.

Answer "Yes" or "No."

Yes

If you answered "Yes" to QUESTION 1, then answer the following question. Otherwise, do not answer the following question.

## QUESTION 3

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Ralph Dean for his damages, if any, that resulted from the Jim Coleman Company's false, misleading, or deceptive act or practice?

Consider the following elements of damages, if any.

Net economic loss – The amount Ralph Dean paid for the modular homes and accessories and any out of pocket expenses related to the purchase of the home minus the value of any benefits he received in return.

Answer in dollar and cents for damages, if any.

$ 47,659.38

If you answered "Yes" to QUESTION 2, then answer the following question. Otherwise, do not answer the following question.

## QUESTION 4

What sum of money, if any, in addition to actual damages, should be awarded to Ralph Dean against the Jim Coleman Company because the Jim Coleman Company's conduct was committed knowingly?

Factors to consider in awarding additional damages, if any, are:

(a) The nature of the wrong;
(b) The character of the conduct involved;
(c) The degree of culpability of the Jim Coleman Company.
(d) The situation and sensibilities of the parties concerned;
(e) The extent to which such conduct offends a public sense of justice and propriety.

Answer in dollar and cents for damages, if any.

$ 142,998.14

If you answered "Yes" to QUESTION 1, then answer the following question. Otherwise, do not answer the following question.

## QUESTION 5

What is a reasonable fee for the necessary services of Ralph Dean's attorney, stated in dollars and cents?

Answer with an amount for each of the following:

For representation in the trial court

Answer: $ 26,960

For representation through appeal to the court of appeals

Answer: $ 15,000

For representation through appeal in the Supreme Court

Answer: $ 10,000

9.   Do not consider or guess whether any party is covered by insurance unless I tell you to.

10.   During the trial, if taking notes will help focus your attention on the evidence, you may take notes using the materials the court has provided. Do not use any personal electronic devices to take notes. If taking notes will distract your attention from the evidence, you should not take notes. Your notes are for your own personal use. They are not evidence. Do not show or read your notes to anyone, including other jurors.

You must leave your notes in the jury room or with the bailiff. The bailiff is instructed not to read your notes and to give your notes to me promptly after collecting them from you. I will make sure your notes are kept in a safe, secure location and not disclosed to anyone.

You may take your notes back into the jury room and consult them during deliberations. But keep in mind that your notes are not evidence. When you deliberate, each of you should rely on your independent recollection of the evidence and not be influenced by the fact that another juror has or has not taken notes. After you complete your deliberations, the bailiff will collect your notes.

When you are released from jury duty, the bailiff will promptly destroy your notes so that nobody can read what you wrote.

11.   I will decide matters of law in this case. It is your duty to listen to and consider the evidence and to determine fact issues that I may submit to you at the end of the trial. After you have heard all the evidence, I will give you instructions to follow as you make your decision. The instructions also will have questions for you to answer. You will not be asked and you should not consider which side will win. Instead, you will need to answer the specific questions I give you.

Every juror must obey my instructions. If you do not follow these instructions, you will be guilty of juror misconduct, and I may have to order a new trial and start this process over again. This would waste your time and the parties' money, and would require the taxpayers of this county to pay for another trial.

Do you understand these instructions? If you do not, please tell me now.

Please keep these instructions and review them as we go through this case. If anyone does not follow these instructions, tell me.

Signed: ꓓ une 7, 2014

Richard C. Terrell
Judge Presiding

Tab D



3450 Antoine
Houston, TX 77092
T: 281.808.0975
www.pmmcasa.com

# ORDER FORM

| Order Date | 10/22/2009 |
| Date Needed | asap |
| P.O. # | |

Invoice To: Ralph & Alisa Dean
P.O. Box 348
Sandia, Texas 78383

Ship To: Ralph & Alisa Dean
1718 C.R. 418 Premont Texas
Ph. 361-547-2939 & 361-537-3866

Completed By: Bob Oaks

Attn: Ralph

Tel: fax 361-547-9721

☒ Will Accept Partials

E-Mail:

☒ Complete Shipments Only

| | | | | | |
|---|---|---|---|---|---|
| 2 | House Modules W/Kitchen & Washer-Dryer Area | | $ 54,000.00 | $ | 54,000.00 |
| 4 | Air Conditioner w/ Heater | | $ 1,200.00 | $ | 4,800.00 |
| 2 | Water Heater w/ Ext. Cabinet | | $ 450.00 | $ | 900.00 |
| 1 | Time and Material for site preparation | | T.B.D. | | |
| | Sub Total | | | $ | 59,700.00 |
| | Deposit | | ($30,000.00) | $ | (30,000.00) |
| | Sub Total | | | $ | 29,700.00 |
| 1 | Pre existing Bathroom Module | | $ - | $ | - |
| | Refurbishing of Module | | $ 1,500.00 | $ | 1,500.00 |
| | Shipping of Module from Monterrey | | $ 2,500.00 | $ | 2,500.00 |
| | Sub Total | | | $ | 33,700.00 |
| | 50% of remaining balance at time of shipping from Monterrey | | $ 16,850.00 | | |
| | 50% of remaining balance at time completion of installation | | $ 16,850.00 | | |

| | $ | 63,700.00 |

@ 6-2-14

11-04-49987-CV
PLAINTIFF'S EXHIBIT "6"

Tab E

## CAUSE NO. 11-04-49987-CV

| RALPH DEAN | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | 79th JUDICIAL DISTRICT |
| | § | |
| LIVING MODULAR, LLC, | § | |
| RANDY COLEMAN AND | § | |
| JIM COLEMAN COMPANY | § | JIM WELLS COUNTY, TEXAS |

### PLAINTIFF'S ADDITIONAL OUT OF POCKET PAYMENTS
### FOR MODULAR HOME

| $8,000.00 | Direct Deposit | Exhibit 9(b) |
|---|---|---|
| $2,500.00 | To build pad | |
| $1,428.88 | Ferguson | Exhibit 9(c) |
| $1,428.89 | Fergusons | Exhibit 9(d) |
| $1,076.00 | C&K Builders (hinges & hardware) | Exhibit 9(e) |
| $208.11 | C&K Builders | Exhibit 9(f) |
| $17.50 | USPS | Exhibit 9(g) |
| $14,659.38 | TOTAL | |

@ 6-2-14

11-04-49987-CV
PLAINTIFF'S EXHIBIT "9(a)"

RALPH S DEAN REVOCABLE TRUST

T R A N S A C T I O N     D E T A I L

|  |  | CASH | TAX COST |
|---|---|---|---|
| | WITHDRAWALS FROM ACCOUNT - CASH OR SECURITIES | | |

11/20/09  PAID TO VILLAS @ CORONADO APARTMENTS                                  668.00-
          DIST ON BEHALF OF BENEFICIARY
          APT 1211 FOR ALISA & RALPH DEAN PLUS GARAGE CHARGE

11/25/09  PAID TO VILLAS @ CORONADO APARTMENTS                                   11.71-
          DIST ON BEHALF OF BENEFICIARY
          ***UNIT# 1211 INVOICE #18974707

11/25/09  PAID TO AT&T                                                           50.86-
          DIST ON BEHALF OF BENEFICIARY
          ***ACCOUNT NO. 713 668-3283 712 3

12/01/09  PAID TO THE FURNITURE COMPANY                                         113.25-
          DIST ON BEHALF OF BENEFICIARY
          1/2 FURNITURE LEASE @ VILLAS @ CORONADO UNIT 1211

12/14/09  PAID TO A T & T HOME ENTERTAINMENT                                     62.46-
          DIST ON BEHALF OF BENEFICIARY
          ***CABLE FOR HOUSTON APARTMENT/ACCT NO. 200263725

12/16/09  PAID TO ABA# 114000093 FROST BANK #130343004                        4,000.00-
          TRANSFER TO CHECKING
          AS REQUESTED BY RALPH

12/18/09  FOREIGN TAX WITHHOLDING                                                 5.13-
          PETROLEO BRASILEIRO SA PETRO ADR*

12/21/09  PAID TO DIRECT ENERGY                                                  32.08-
          DIST ON BEHALF OF BENEFICIARY
          ***ACCT #5000026769-INV #1206275

12/21/09  PAID TO AT&T                                                           50.86-
          DIST ON BEHALF OF BENEFICIARY
          ***ACCOUNT NO. 713 668-3283 712 3

12/21/09  PAID TO VILLAS @ CORONADO APARTMENTS                                    8.18-
          DIST ON BEHALF OF BENEFICIARY
          ***UNIT# 1211 INVOICE #19228482

11-04-49987-CV
PLAINTIFF'S EXHIBIT "9(b)"

ALISA YVONNE DEAN REVOCABLE TRUST

TRANSACTION   DETAIL

|  |  | CASH | TAX COST |
|---|---|---|---|

WITHDRAWALS FROM ACCOUNT - CASH OR SECURITIES

| 12/01/09 | PAID TO THE FURNITURE COMPANY<br>DIST ON BEHALF OF BENEFICIARY<br>1/2 FURNITURE LEASE @ VILLAS @ CORONADO UNIT 1211 | 113.25- | |
| 12/14/09 | PAID TO A T & T HOME ENTERTAINMENT<br>DIST ON BEHALF OF BENEFICIARY<br>***CABLE FOR HOUSTON APARTMENT/ACCT NO. 200263725 | 62.46- | |
| 12/16/09 | PAID TO ABA# 114000093 FROST BANK #130343004<br>TRANSFER TO CHECKING<br>AS REQUESTED BY ALISA | 4,000.00- | |
| 12/18/09 | FOREIGN TAX WITHHOLDING<br>PETROLEO BRASILEIRO SA PETRO ADR* | 22.55- | |
| 12/21/09 | PAID TO DIRECT ENERGY<br>DIST ON BEHALF OF BENEFICIARY<br>***ACCT #5000026769-INV #1206275 | 32.08- | |
| 12/21/09 | PAID TO AT&T<br>DIST ON BEHALF OF BENEFICIARY<br>***ACCOUNT NO. 713 668-3283 712 3 | 50.86- | |
| 12/21/09 | PAID TO VILLAS @ CORONADO APARTMENTS<br>DIST ON BEHALF OF BENEFICIARY<br>***UNIT #1211 INVOICE #19228482 | 8.18- | |
| 12/21/09 | PAID TO VILLAS @ CORONADO APARTMENTS<br>DIST ON BEHALF OF BENEFICIARY<br>APT 1211 FOR ALISA & RALPH DEAN PLUS GARAGE CHARGE | 668.00- | |
| 12/29/09 | PAID TO UNITED STATES TREASURY<br>1040ES PAYMENT<br>***SSN 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 & 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, 2009 FORM 1040ES | 28,592.20- | |
| TOTAL | | 223,037.66- | 29,343.93- |

FERGUSON ENTERPRISES, INC. #1918
PO BOX 847411
DALLAS, TX 75284-7411

PH: 361-994-7426    FAX:

| ORDER NO. | REQUIRED DATE | SHIP WHS. | SELL WHS. |
|-----------|---------------|-----------|-----------|
| PA013891  | 01/04/10      | 1918      | 1918      |

| CUSTOMER NO. | CUSTOMER ALPHA | CONTRACT NO. | BID NO. | ORDER DATE | ORDERED BY | INSTRUCTIONS |
|--------------|----------------|--------------|---------|------------|------------|--------------|
| 41866        | DEANALISA      |              |         |            |            |              |

**SOLD TO**
ALISA DEAN
P.O. BOX 348-C
SANDIA, TX 78383

CUST PH: 361-537-5959

**SHIP TO**

SHIP VIA

| PCS | BAGS | BOXES | CRATE |
|-----|------|-------|-------|

| CUSTOMER P.O. NO. | JOB NAME | ATTN: | SHIP WT. | SHIP DATE |
|-------------------|----------|-------|----------|-----------|

DATE.......................: 01/04/10
CARD TYPE..................: Visa
ACCT #.....................: XXXXXXXXXXXX4847
AUTHORIZATION #............: 16A321
AMOUNT.....................: $1428.88

I agree to pay the total amount of this purchase. By signing below, I understand and authorize backordered products to be authorized and charged to my credit card account upon shipment. If third party payment

ALISA DEAN

| NO RETURNS ALLOWED WITHOUT PROPER AUTHORIZATION. RETURNED MATERIALS SUBJECT TO HANDLING CHARGES. | SUBTOTAL | INBOUND FREIGHT | OUTBOUND SHIPPING | TAX | LESS DEPOSIT |
|---|---|---|---|---|---|
| SEE REVERSE SIDE FOR IMPORTANT TERMS AND CONDITIONS OF SALE AND LIMITATIONS OF WARRANTY. | | | | | |

CUSTOMER'S
SIGNATURE: _____    DATE: _____    TERMS:

CUSTOMER COPY

11-04-49987-CV
**PLAINTIFF'S EXHIBIT "9(c)"**

# FERGUSON ENTERPRISES, INC.

221 JUNIOR BECK DRIVE
CORPUS CHRISTI, TX 78405-0000



| AMOUNT DUE | DATE | CUSTOMER | PAGE |
|---|---|---|---|
| 1,428.88 | 12/31/09 | 41866 | 1 |

| AMOUNT PAID | IMPORTANT |
|---|---|
| | TO INSURE PROPER CREDIT RETURN THIS STUB WITH YOUR CHECK TO: |

Please contact with Questions:
361-289-1977

00039556 01 SP    0.440 01 TR 171 FRSDCF03 000000
ALISA DEAN
P.O. BOX 348-C
SANDIA, TX 78383

752847411119
FERGUSON ENTERPRISES INC #116
P O BOX 847411
DALLAS, TX 75284-7411



PLEASE INDICATE INVOICES
TO WHICH PAYMENT APPLIES ▼

| INVOICE DATE | INVOICE NUMBER | CUST. ORDER NO. | CURRENT | PAST DUE | INV. DATE | INVOICE NUMBER | √ | AMOUNT |
|---|---|---|---|---|---|---|---|---|
| | Warehouse 116 | | | Warehouse 116 | | Warehouse 116 | | |
| | | | We Wish You a HAPPY NEW YEAR ! | | | | | |
| 11/27/09 | PA*FPA01945 | | | -1,428.89 | 11/27/09 | PA*FPA01945 | | -1,428.8! |
| 12/03/09 | 0831441 | | 2,857.77 | | 12/03/09 | 0831441 | | 2,857.7 |

PLEASE DETACH AND RETURN WITH YOUR REMITTANCE.

11-04-49987-CV
PLAINTIFF'S EXHIBIT "9(d)"

| | | | 2,857.77 | -1,428.89 | TOTAL AMOUNT DUE | | | 1,428.88 |

Amount: $1,076.00          Sequence Number: 9992600235
Account: 2666665806        Capture Date: 12/09/2009
Bank Number: 11300002      Check Number: 9762



Amount:        $208.11
Account:       2666665806
Bank Number:   11300002

Sequence Number:   8892810929
Capture Date:      12/16/2009
Check Number:      9764



RALPH S DEAN
OR ALISA Y DEAN
PO BOX 348
SANDIA, TX 78383

9764

35-2/1130 TX
1358

12-10-09
Date

PAY to the order of    C & K                                    $ 208. $\frac{cc}{xx}$

Two Hundred Eight Dollar & $\frac{cc}{100}$                              Dollars

Bank of America

ACH R/T 111000025

Bank of America Advantage®

For _____

⑈11300023⑈ 00 2666665806⑈ 9764

FOR DEPOSIT ONLY
C & K Builders Hardware
Account # 0297518

908 12/15/2009 1411 11 20

11-04-49987-CV
PLAINTIFF'S EXHIBIT "9(f)"

11-04-49987-CV
PLAINTIFF'S EXHIBIT "9(g)"

```
==================================
            ALICE
         ALICE, Texas
          783324856
         4879830332-0099
  /03/2009 (361)664-2116 04:22:28 PM
==================================
========== Sales Receipt ==========
Product       Sale Unit      Final
Description    Qty Price      Price

HOUSTON TX 77092             $17.50
Zone-3 Express Mail
PO-Add Flat Rate
1.40 oz.
Label #:     EH951776265US
Next Day 3PM   / Normal Delivery
Signature Requested
                          ========
Issue PVI:                  $17.50

                          ========
 al:                        $17.50
                          ========
Paid by:
Visa                        $17.50
  Account #:    XXXXXXXXXXXXX4847
  Approval #:    152621
  Transaction #:  561
  28903480887
```

EXPRESS MAIL

UNITED STATES POSTAL SERVICE®

Customer Copy
Label 11-B, March 2004

Post Office To Addressee

EH 951776265 US

**ORIGIN (POSTAL SERVICE USE ONLY)**

PO ZIP Code: 78332

Day of Delivery: Next

Postage: $17.50

Date Accepted: Mo 11 Day 03 Year 09

Scheduled Date of Delivery: Month 11 Day 04

Time Accepted: 4:20 PM

Scheduled Time of Delivery: 3 PM

Flat Rate or Weight: lbs 1.4 ozs.

Total Postage: $17.58

TX. 78332

**DELIVERY (POSTAL USE ONLY)**

NOV

**FROM:** (PLEASE PRINT) PHONE ( 361 537-3646

R-M DEAN
P.O. BOX 348
SANDIA, TX 78383

**TO:** (PLEASE PRINT) PHONE (

KANDY COLSMAN
5842 WEST 34 ST
HOUSTON, TX 77092

ZIP+4: 77092

**FOR PICKUP OR TRACKING**
Visit www.usps.com
Call 1-800-222-1811

Tab F

# Homes

## "Solid as a rock"

11-04-49987-CV
PLAINTIFF'S EXHIBIT 2(a)



## Living Modular Concrete Modules are great rooms for:

| | | |
|---|---|---|
| • Guest Quarter | • In-Laws Accommodations | • Family |
| • Hunting Cabin | • Client Quarters | • Office |
| • Vacation Homes | • Starter Homes | • Art Studio |
| • Library Room | • Entertainment Room | • Art Room |
| • Dry Storage | • Horse Stable | • Church |
| • Basement | • Gun Room | • Warehouse |
| • Coat Room | • Trophy Room | |

# PVMM Building Housing

PVMM housing is a company that offers building construction services in Mexico. Since 1972, the company has produced affordable housing. Affordable housing is important for a sustainable economy and for families.

PVMM uses a particular progressive Polystyrene Modular system, a type of production like panels made of polystyrene called Polar panels, which provide with significant advantages: density, structural capacity, and light weight. Your final product is a complete house, including the electrical wiring, plumbing, windows, doors, etc. You don't have to build anything else, the house will be plastered completely finished.

The benefit of technology like this is it enables the manufacturing process to be changed as needed, and also it takes only 24 hours to build a house.

PVMM housing is a candidate for the Habitat Business Award for Sustainable Urbanisation.



Street view of a neighbourhood in Ramos Arizpe, Mexico



Aerial view of a neighbourhood of PVMM houses in Mexico





Candidate for the

## Habitat Business Award

*for Sustainable Urbanisation*



UN-HABITAT



Concrete Mixing Plant With Patented Cellular Injection Technology





Exterior Concrete Metal Form





Interior metal forms on 5" slab with 6x6 welded mesh and 3/8" rebar for reinforcement. Rebar tied to slab, walls and roof to create monolithic pour.





Modules with 5" thick exterior walls and 3 1/2" thick interior walls.



Cellular Lightweight Concrete (CLC) is conventional concrete, where natural aggregate (gravel) is exchanged for the best and cheapest medium available, namely air, embedded in an organic and biodegradable foam that offers no chemical reaction but solely serves as wrapping material for the air. Consequently, CLC behaves like conventional concrete, in particular concerning curing, hardening and most important "ageing". CLC infinitely increases its strength by hydration (forming of crystals in cement) as long as exposed to humidity in the atmosphere.

For structural (steel reinforced) application, CLC is used in densities of 1.200 to 1.400 kg/m³, which, due to the billion of micro sized and uniform air bubbles offer 500% more thermal insulation and substantially higher fire rating than conventional concrete. If a wall of conventional concrete should offer the same thermal insulation as CLC, the wall produced would in average measure 5 times thicker and therefore use 10 times more material (sand, gravel, cement) to produce. In hot environment, the essential air conditioning requires 500% more primary energy to cool down than what a heating, a fact which is not even known to many experts. CLC also is an environmentally friendly material.



Site Preparation requires a bank and level base.





Modules arriving on truck





First module being set on sand pad with 60 ton crane or larger.
Booms slopped to one shot overdraw in water.





Work modules coming together. Two modules are assembled while [illegible] together and water proofed all in one day.



View of concrete module roof waterproofed



Bathroom          Dining room          Kitchen





- 2 Concrete Cellular Modules
- Kitchen Area
- Bathroom With Tiled Shower & Toilet
- Painted Texture Walls, Floor and Trim
- Windows, Screens & Doors
- Pre Wired and Electrical Panel
- Pre Plumbed for Water and Sewer
- Transportation & Road Permits from Monterrey, Mexico to Job Site
- Crane & Rigging
- 1 Year Guaranteed Warranty Against Materials & Workmanship
- Labor & Parts



Approximately:
384 square feet



- 3 Concrete Cellular Modules
- Kitchen Area
- Bathroom With Tiled Shower & Toilet
- Painted Textured Walls, Inside and Out
- Windows, Screens & Doors
- Pre-Wired and Electrical Panel
- Pre-Plumbed for Water and Sewer
- Transportation & Road Permits from Magnolia, by MG Concrete to Job Site
- Crane & Rigging
- Drop Unit and Place Unit Ready to Tie Into Water and Sewer Connections
- County Approvals



Approximately:
586 square feet





# [illegible title]

## One Module

Kitchen w/ Dining Area and Storage Area


Two Bathrooms and Storage Areas




Bare Rooms


Bedroom w/ Living Room






Kitchen w/ Storage Room







Bedrooms w/ Living Rooms



Office w/ Kitchen



Bedrooms w/ Living Rooms



Office w/ Bathroom



Office w/ Whats rooms



## Three Modules



Standard two bedroom plane



2 Bedrooms w/ Kitchen, Living Room & Bathroom





2 Separate Apartments
Each with Kitchen, Bathroom, Dining Room, Living Room & One Bedroom

# SW Mobile

Workplace... Your office... Storage... Area Kitchen... bathroom... utility... spaces...



# Need Financing?

Financing for your Mobile Home is available through Cascade Financial Services. Cascade Financial Services specializes in financing for mobile and manufactured homes. You can provide financing online at www.cascadeloans.com. You will be a few minutes to fill out a quick application... information... provide on your application... provide inside the Cascade... application... pre-qualify... financing... borrower...





Fountain















# CONCRETE HOMES

*Two-Bedroom With Kitchen Area and Bathroom*

- 3 Concrete Cellular Modules
- R-16 Insulation Value
- Kitchen Area
- Bathroom With Tiled Shower and Toilet
- Painted Textured Walls, Inside and Out
- Windows, Screens & Doors
- Pre-Wired and Electrical Panel
- Pre-Plumbed for Water and Sewer
- Transportation & Road Permits from Monterrey, Mexico to Job Site
- Crane & Rigging
- Two 1" Insulated Water Heaters Included

11-04-49987-CV
PLAINTIFF'S EXHIBIT "2(b)"



**Approximately 586 Square Feet**

**1 Year Unconditional Warranty Against Materials & Workmanship**

**Other options are available**

Randy Coleman at 713-252-9326
randy@livingmodularhomes.com
Wayne Coleman at 281-808-7875
wayne@livingmodularhomes.com
or visit us at 3450 Angelos
www.livingmodularhomes.com



11-04-49987-CV

PLAINTIFF'S EXHIBIT "2(c)"





Concrete Mixing Plant with Patented Chilled Air Injection Technology.









Interior metal form on 5" slab with 6X6 welded mesh and 3/8 rebar for reinforcement. Rebar tied to slab, walls and roof to create monolithic pour



3



Modules with 5" thick exterior walls and 3 1/2" thick interior walls



But if one analyzes CLC more carefully and compares it with conventional concrete, one will aggregate but a lower heat of hydration or a hot climate, and in the event it is available in bricks, one has to transport it and which should be done locally and easily served as wrapping material of the concrete. Consequently, in comparison with conventional concrete, in particular deterioration during harder than the most important "ageing" [that] in [inactive] and [loses] size which by hydration (ripening or crystal arrangement) when exposed to humidity in the atmosphere.

For structural (steel reinforced) application CLC is used in densities of 1200 to 1400 kg/m³, which, due to the billion of micro sized and uniform air bubbles offer 500% more thermal insulation and substantially higher fire rating than conventional concrete. If a wall of conventional concrete should offer the same thermal insulation as CLC, the wall produced would have to measure 5 times thicker and therefore use 10 times more material (sand, gravel, cement) to produce. In hot environment, a house equals air condition requires 500% more primary energy to cool down than when heated, a fact which is not even known to many experts. CLC also is an environmentally friendly material.



Site Preparation requires embanks and level base.



6



Mobile gantry boom truck.



7



First module being set on sand pad with 60 ton crane at Arcata.
Roof is sloped to one side to drain rain water.





Two modules coming together. Two modules are attached, welded together and waterproofed all in one day.

9



Tab G



6-2-14 @

11-04-49987-CV
PLAINTIFF'S EXHIBIT "3"

Tab H

# WEBB CASON COVICH

Charles C. Webb, Jr.
Benny M. Cason
Daniel G. Covich
Danny Tower

August 21, 2012

Wayne Coleman
Living Modular LLC
5842 West 34th Street
Houston, Texas 77092

> RE: *Cause No. 11-04-49987-CV;*
> *Ralph Dean v Living Modular, LLC, Randy Coleman and The Jim Coleman Company*

Dear Mr. Coleman:

Living Modular, LLC is a defendant in the above-referenced pending lawsuit and you have previously testified by deposition in this case as the representative of Living Modular. Therefore, you are certainly familiar with the circumstances that led to the filing of this lawsuit. Ralph Dean ordered a modular home, paid a substantial sum of money towards that home and has received nothing. All of this was discussed at some length in your deposition.

Prior to filing that lawsuit, I sent a demand letter to your brother, Randy Coleman. I do not know if he ever gave you a copy of that letter and therefore, I am now sending you, as the representative of Living Modular, LLC, a separate demand letter pursuant to Section 17.505 of the Texas Deceptive Trade Practices-Consumer Protection Act. My client has been the victim of numerous misrepresentations and broken promises in connection with the failure to deliver a modular home as ordered and paid for.

In connection with the conduct and/or omissions described above, Living Modular, LLC has engaged in an unconscionable action or course of action by taking advantage of the lack of knowledge, ability, experience or capacity of my client to a grossly unfair degree.

@ 6-3-14

11-04-49987-CV
PLAINTIFF'S EXHIBIT "12"

Wayne Coleman
Living Modular LLC
August 21, 2012
Page 2

Living Modular, LLC has committed the false, misleading or deceptive practices as indicated below:

a. Caused confusion or misunderstanding as to the source, sponsorship, approval, or certificate of goods or services.

b. Represented that goods or services have sponsorship, approval, characteristics , ingredients, uses, benefits or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation or connection which he does not;

c. Represented that a guarantee or warranty confers or involves rights or remedies which it does not have or involves;

d. Represented that work or services have been performed when the work or services were not performed; and

e. Failed to disclose information concerning goods or services which was known at the time of the transaction with the intention to induce Mr. Dean into a transaction into which Mr. Dean would not have entered had the information been disclosed.

Notice is hereby given under §17.505 of the Texas Deceptive Trade Practices-Consumer Protection Act that my client has sustained economic damages in the amount of $39,704.00, damages for mental anguish in the amount of $50,000.00 and attorney's fees and litigation expenses in the amount of $16,676.53. These damages total $106,380.53 and demand is therefore made pursuant to the DTPA for the amount of $106,380.53.

We will agree to abate any further action in this case for a period of 60 days in order for Living Modular LLC to fully respond to this demand. If payment of the amount as stated above is not made within that time period, we will seek these damages as well as additional damages as allowed under the DTPA. Please be advised that under the DTPA, an award of court costs and reasonable and necessary attorney's

fees is mandatory to a consumer who prevails in such a lawsuit. Please be further advised that damages for mental anguish and up to three times the amount of economic damages may be awarded at trial in the event that the triar of fact finds that actionable conduct was committed "knowingly". If the conduct is found to be committed "intentionally", my client could recover up to three times the amount of damages for both mental anguish and economic damages.

I urge you to give this matter your immediate attention.

Yours truly,

Charles C. Webb, Jr.

cc:     Ralph and Alisa Dean
        PO Box 348
        Sandia, Texas 78383-0348